# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KEVIN POLAN, | ) | 1:05cv0679 DLB |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## **BACKGROUND**

Plaintiff Kevin Polin[1] ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[2]

---

[1] Plaintiff's name is spelled "Polan" on his complaint and that spelling was therefore used to initiate this action. However, according to the Administrative Record and Plaintiff's subsequent filings, it appears his last name is "Polin."

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. On May 18, 2006, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

1

**FACTS AND PRIOR PROCEEDINGS**[3]

Plaintiff filed his application for disability insurance benefits on July 29, 2003, alleging disability since May 1, 2003, due to a bad back. AR 68-71, 76-85. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 45-48, 53-56, 57. On September 22, 2004, ALJ James Berry held a hearing. AR 154-185. On December 8, 2004, ALJ Berry determined that Plaintiff was not disabled. AR 13-21. On March 21, 2005, the Appeals Council denied Plaintiff's request for review. AR 5-9.

Hearing Testimony

ALJ Berry held a hearing on September 22, 2004, in Bakersfield, California. Plaintiff appeared with his attorney, Geoffrey Hayden. Vocational Expert ("VE") Ken Ferra also appeared and testified.

Prior to questioning, the ALJ asked if there were any objections to the introduction of the documentation into evidence. Mr. Hayden indicated that he objected to the report of consultive examiner Eli Shirazy, M.D., but would not object to its introduction. Mr. Hayden argued that many of tests listed in the report were not performed and that the report should be discredited. AR 157. Plaintiff testified that only his blood pressure was taken. AR 157.

Plaintiff testified that he was 42 years old and completed the eleventh grade. AR 158-159. He was five feet, seven inches tall and weighed between 375 and 400. AR 159. He last worked in October 2002 as a truck driver. AR 159-160. He had a Class A license, but lost it after an accident. AR 160. He has a Class C driver's license now and drives a car. He has no problems driving, except for a "little hassle" getting in and out. AR 161.

Plaintiff explained that pain in his lower and middle back keeps him from working. His treating physician told him that his back would feel better if he lost weight. He has tried to lose weight. AR 161-162.

Plaintiff's attorney questioned him about Dr. Shirazy's examination. Plaintiff testified that Dr. Shirazy did not put a light in his eye, did not look in his ears, did not check on his neck

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

or the glands in his neck, did not check his stomach, did not listen to his heart, did not perform straight leg lifts, did not perform strength testing, and did not check his reflexes. AR 162-164. Dr. Shirazy had Plaintiff bend over to see if he could touch his toes and "did a couple of pressure points" in his back, but nothing else. AR 163. Plaintiff testified that there was no examination table in the office. AR 162.

Plaintiff further explained that he has no problems with his feet, but that his knees hurt when he walks because of his weight. AR 164-165. He also indicated that it was hard for him to walk up stairs and that he gets tired a lot. AR 165. He is not in pain when he lays down, which he does up to four hours per day. AR 165. He lays down because if he just sits, his leg becomes numb. AR 166.

Plaintiff takes medication for his blood pressure and eyes, but it does not cause any side effects. AR 165. The blood pressure medication helps. AR 180. He does not take any pain medication. AR 165.

The heaviest thing he carries is a sack of groceries. AR 166. If he had to lift 50 pounds once, he could, but it would hurt his back. AR 166. He can walk about 20 to 30 feet before needed to lean against something. He can stand for three minutes before needing to sit down. AR 167. He can sit for an hour. AR 168. He can't bend over and pick something up. AR 168. He has trouble putting his shoes on. AR 169. His left hand does not grip as well as his right. AR 169. His left leg gets numb. AR 169. He also gets short-winded if he has to exert himself "any little bit at all." AR 172.

On a normal day, he uses his computer and watches television. He lives by himself and goes to his parents' house for meals. He gets food stamps and partial rent assistance. AR 168. His mother or sister cleans his trailer, and his mother cooks his meals. AR 169. He does not exercise. AR 170.

Plaintiff explained that the only way he had to support himself was to sit in a truck and drive, but he lost his Class A license after an accident. AR 170. He was convicted of vehicular homicide and served an 80 day sentence. AR 170. Plaintiff testified that if his Class A license had not been revoked, he would still be able to work as a truck driver. AR 171.

Plaintiff sees his treating physician, Dr. Carey, once a month. AR 175. Dr. Carey takes his blood pressure and checks his eyes. AR 176. He told Plaintiff to get an MRI, but he hasn't been able to do so yet. AR 176. Dr. Carey has never prescribed pain medication. AR 177.

When questioned by the ALJ, Plaintiff thought he could stand about 30 minutes in an eight hour day, sit for about two hours, walk 100 feet, and lift and carry ten pounds. AR 178-179.

The ALJ asked the VE to assume an individual of Plaintiff's age, education, and past relevant work experience. This person could lift and carry 50 pounds occasionally, 25 pounds frequently, stand, walk, and sit for six hours each, and occasionally climb, balance, stoop, kneel, crouch and crawl. AR 181. This person could perform Plaintiff's past relevant work as a truck driver. AR 181.

For the second hypothetical, the ALJ asked the VE to assume a person who could sit for two hours total and stand and walk for zero hours. This person could not carry or lift any weight, and could not grasp, push or pull with the left upper extremity. This person could not operate foot controls, and could not bend, squat, crawl, climb or reach. This person had to avoid exposure to unprotected heights and dangerous moving machinery, and was moderately limited in the ability to be exposed to temperature and humidity changes or extremes. This person was mildly limited in the ability to be exposed to dust, fumes, and gases. This person could not perform Plaintiff's past relevant work or any other job in the national economy. AR 182.

If this person could sit, stand and walk 30 minutes each in an eight hour day, he could not perform Plaintiff's past relevant work or any other job. AR 182.

Medical Record

On May 19, 2003, Plaintiff went to the emergency room at Kern Medical Center and complained of lower back pain for the past two weeks. Plaintiff indicated that his pain increased with walking, but denied radiating pain or numbness. He was described as obese. On examination, his back was nontender and he was able to flex his back to 80 degrees. He was prescribed Motrin and referred to his primary physician. AR 118-121.

On June 4, 2003, Plaintiff underwent x-rays of his lumbar spine. The test revealed mild disc space narrowing at L5-S1. AR 124. X-rays of his knees taken on the same day were normal. AR 124.

On September 10, 2003, Alexander Austria, M.D., completed a physician's report for Plaintiff's claim for Kern County General Assistance. Dr. Austria indicated that Plaintiff suffered from obesity and back pain, but he expected improvement with weight loss. Plaintiff was unemployable from September 10, 2003, through November 10, 2003. Plaintiff was placed on a reduced-calorie diet and weight loss medication. Dr. Austria stated that Plaintiff said he could not afford the treatment recommended for his back and weight loss. AR 146.

Plaintiff saw Eli Shirazy, M.D., on September 21, 2003, for a consultive orthopedic examination. Plaintiff complained of low back pain that began six months ago and stated that it "feels like a muscle." He denied radiation, numbness, paresthesis and motor weakness. Plaintiff explained that his symptoms were aggravated by walking very far, but that sitting, bending, pushing, pulling, carrying and standing are "okay." Plaintiff reported no medications and indicated that he could perform all activities independently. On examination, Plaintiff was described as obese. He could maneuver without difficulty in the examination room and could get on and off the examination table without difficulty. He had a non-antalgic gait and was able to heel-walk, toe-walk and squat without difficulty. Straight leg testing was negative and motor and sensory testing was normal. AR 126-129.

Dr. Shirazy diagnosed mechanical low-back pain secondary to morbid obesity. There was no clinical evidence suggestive of any significant internal derangement of the lumbar spine or neurogenic involvement. Dr. Shirazy opined that a weight loss program or gastric bypass surgery would be extremely helpful. Dr. Shirazy also diagnosed uncontrolled hypertension and instructed Plaintiff to seek medical attention in an emergency room to avoid the possible risk of sudden death, myocardial infarction, or stroke. AR 129. Dr. Shirazy opined that Plaintiff could stand and walk for six hours in an eight hour workday, due to his morbid obesity. Sitting was not restricted. Plaintiff could lift or carry 50 pounds frequently and occasionally. Due to his morbid obesity, Plaintiff could occasionally bend, stoop, crouch, squat, and kneel. AR 129.

On October 14, 2003, State Agency physician George W. Bugg, M.D., completed a Physical Residual Functional Capacity Assessment form. Dr. Bugg opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently. He could stand and/or walk about six hours in an eight hour work day and could sit for about six hours. He could occasionally climb, balance, stoop, kneel, crouch and crawl. He had no further limitations. AR 130-137. These findings were affirmed on December 23, 2003. AR 130.

On October 16, 2003, Plaintiff was examined by Tony A. Carey, D.O. Dr. Carey referred him for an MRI scan of his lower back and placed him on a low-calorie diet and Meridia, a weight loss medication. AR 143. Dr. Carey also prescribed a anti-hypertensive medication. AR 143. He also noted, "disability." AR 143.

Dr. Carey filled out a doctor's certificate for Plaintiff's claim for California Disability Insurance Benefits. He opined that Plaintiff's disability began on June 25, 2003, and would continue through April 1, 2004. He diagnosed lumbar pain, hypertension and morbid obesity and listed "severe lumbar pain, increased BP, obesity-morbid" as his findings. AR 142.

On November 11, 2003, Dr. Carey completed a physician's report for Kern County General Assistance program in which he diagnosed Plaintiff with lumbar pain, hypertension and morbid obesity, and described his prognosis as guarded. AR 141. Dr. Carey indicated that Plaintiff was "unemployable" from June 25, 2003, through April 1, 2004. Dr. Carey prescribed a reduced calorie diet and weight loss medication.

Dr. Carey completed a questionnaire and physical capacities evaluation form on September 8, 2004. Dr. Carey opined that Plaintiff was precluded from working at any exertional level due to severe low back pain, severe morbid obesity, and spine pain. He based this opinion on "seeing pt. in office," and opined that Plaintiff could sit for 30 minutes, stand for 30 minutes, and walk for 30 minutes in an eight hour day. Dr. Carey believed that Plaintiff's disability began in October 2002. AR 150. On the physical capacities evaluation, Dr. Carey opined that Plaintiff could not sit, stand or walk for any length of time, but he could sit for up to two hours in an eight hour work day. He could never lift or carry any weight and could not use his left hand for grasping or pushing and pulling. He could not use his feet for repetitive

movements, and he could not bend, squat, crawl, climb or reach.  He could not be around unprotected heights or moving machinery, but could tolerate moderate exposure to marked changes in temperature and humidity.  He could tolerate mild exposure to dust, fumes and gases.  AR 151.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of degenerative disc disease, hypertension and obesity.  AR 17.  After reviewing the medical evidence, the ALJ determined that Plaintiff's allegations regarding his limitations were not credible.  Plaintiff retained the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally and 25 pounds frequently, and to stand, walk or sit six hours each in an eight hour day.  Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl.  AR 20.  Based on this RFC, the ALJ determined that Plaintiff would return to his past relevant work as a truck driver as previously performed or as generally performed in the national economy.  AR 20.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (degenerative disc disease, obesity and hypertension) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) could perform her past relevant work as a truck driver. AR 20-21.

Plaintiff argues that the ALJ erred in relying on Dr. Shirazy's consultive examination because it was inadequate and because Plaintiff objected to the report at the hearing.

## DISCUSSION

Plaintiff contends that the ALJ erred in relying on Dr. Shirazy's report, which he characterizes as incomplete, and that the ALJ should have further developed the record.

---

[4] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

The opinion of a consultive examiner may constitute substantial evidence because it is based on the examiner's independent findings and observations. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

In determining Plaintiff's RFC, the ALJ reviewed and relied on Dr. Shirazy's report and the opinions of the State Agency physicians, which the ALJ found to be consistent with Dr. Shirazy's findings. AR 18. In giving Plaintiff the benefit of the doubt, the ALJ adopted the more restrictive findings of the State Agency physicians regarding Plaintiff's ability to lift and carry. All other limitations were consistent. The ALJ concluded that Plaintiff retained an RFC that would allow him to return to his past relevant work as a truck driver. AR 20.

In support of his argument that Dr. Shirazy's report was incomplete, Plaintiff points to counsel's objections made during the hearing and to his testimony that Dr. Shirazy did not perform the tests referred to in his report. AR 157, 162-164. Plaintiff contends that Dr. Shirazy "strangely" reported that he performed various tests, contrary to Plaintiff's testimony. Opening Brief, at 5.

Under normal circumstances, the ALJ is entitled to rely on the written medical reports of experts who have examined a claimant. *Richardson v. Perales*, 402 U.S. 389, 402 (1971). This is true despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself. *Id.* Such evidence may constitute substantial evidence supportive of a finding by the ALJ adverse to the claimant "when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician." *Id.*

Here, Plaintiff, who was represented by counsel, did not submit a request to subpoena Dr. Shirazy. 20 C.F.R. § 404.950(d)(1) and (2). In fact, although counsel objected to the report, counsel did not object to its introduction. AR 157. After counsel questioned Plaintiff about the examination, counsel again stated his objection and said, "[a]nd I'll leave that up to the Court – – to put whatever weight they want on that." AR 164. Accordingly, pursuant to *Richardson,* the ALJ was entitled to rely on Dr. Shirazy's opinion absent Plaintiff's request to subpoena the doctor.

Plaintiff's reliance on *Fernandez v. Schweiker*, 650 F.2d 5, 6 (2nd Cir. 1981) is misplaced. In *Fernandez*, the court remanded the action for the ALJ's failure to advise a pro se claimant of her right to subpoena the psychiatrist, where the claimant challenged the factual accuracy of his report. However, the court's decision was based largely on the claimant's pro se status, as well as her worsening mental illness. *Fernandez*, 650 F.2d at 8-9. Here, Plaintiff was represented by counsel during his administrative appeal and counsel was aware of Plaintiff's disagreement with Dr. Shirazy's report. Unlike the claimant in *Fernandez*, Plaintiff had the knowledge and ability to subpoena Dr. Shirazy.

Moreover, the ALJ specifically rejected Plaintiff's credibility, a finding that Plaintiff does not challenge. AR 18-20. Given that Plaintiff's testimony was the only evidence presented to contradict Dr. Shirazy's report, the ALJ was entitled to reject his claims.

To the extent that Plaintiff argues that the ALJ erred by relying on Dr. Shirazy's report to reject treating physician's opinion, his argument fails. For the reasons set forth above, the ALJ was entitled to rely on Dr. Shirazy's report in rejecting Dr. Carey's severe limitations.

The ALJ set forth additional reasons for rejecting Dr. Carey's opinions. An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ explained that Dr. Carey's September 8, 2004, limitations, which were set forth on a fill-in-the-blank questionnaire, lacked objective support. AR 18. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (a brief and conclusory form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion). Indeed, Dr. Carey stated that the objective findings in support of his limitations were "seeing pt in office." AR 150. The ALJ explained that the other medical evidence did not fully support Dr. Carey's limitations. AR 18. The ALJ also questioned Dr. Carey's specialty, the exact nature and duration of Plaintiff's alleged disability, and Dr. Carey's treatment history. AR 18. In an attempt to clarify these issues, the ALJ requested this information and held the record open through the date of his decision. AR 18. Plaintiff did not submit additional information. AR 18.

Finally, Plaintiff's argument that the ALJ failed to fully develop the record is without merit. It is Plaintiff's burden to produce full and complete medical records, not the Commissioner's. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999). However, when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence, the ALJ has a duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). Plaintiff argues that the ALJ should have ordered x-rays and cardiac testing, and should have requested clarification of Dr. Shirazy's opinion. As explained above, absent Plaintiff's request to subpoena Dr. Shirazy, and given his facially complete report, the ALJ was entitled to rely on his opinion as no further clarification was needed. The record also contained x-rays from June 2003. AR 124. Moreover, insofar as the ALJ questioned Dr. Carey's report, he requested additional information and held the record open through the date of his decision. *Id.* (the ALJ may discharge his duty to develop the record by keeping the record open after the hearing to allow supplementation of the record). Plaintiff failed to provide the requested information and cannot now argue that the record was incomplete or ambiguous.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Kevin Polan.


IT IS SO ORDERED.

Dated:   May 19, 2006            /s/ Dennis L. Beck
3b142a                           UNITED STATES MAGISTRATE JUDGE